UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
LEMAR MARTIN,                                        :
                                                     :
         Petitioner,                                :
                                                     :    **DECISION & ORDER**
    v.                                               :    19-CV-4920 (WFK)
                                                     :
JAMIE LAMANNA, Superintendent,                       :
Green Haven Correctional Facility; and               :
LETITIA JAMES, Attorney General of the               :
State of New York,                                   :
                                                     :
         Respondents.                               :
------------------------------------------------------------X

**WILLIAM F. KUNTZ, II, United States District Judge:**

On August 28, 2019, Lemar Martin ("Petitioner") filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 alleging ineffective assistance of trial counsel. ECF No. 1 ("Petition"). For the reasons discussed below, the petition for the writ of habeas corpus is DENIED in its entirety.

## BACKGROUND

### I.   Conviction and Sentencing

From the summer of 2007 through the spring of 2008, the parents of three-year old Kyle Smith were unable to care for him. During that time, the child lived in a one-bedroom apartment in Brooklyn, New York with Lemar Martin ("Petitioner") and his girlfriend Nymeen Cheatham. Respondents' Appellate Brief, ECF No. 6-2, ("Resps.' App. Brief") at 2. Petitioner, Cheatham, and the child all shared a small bedroom. *Id.* On June 5, 2008, after the child was allegedly disrespectful to a house guest, Petitioner "popped" the child in the arm, threw water in the child's face, and forced him to perform calisthenics. *Id.* at 12. When the child continued to misbehave in the middle of the night, Cheatham beat the child to death in the bedroom. *Id.* at 2. Petitioner was in the small bedroom during the beating but did not intervene. *Id.*

Petitioner and Cheatham were charged with murder in the second degree and aggravated sexual abuse in the first degree. Decl. in Opp. to Petition, ECF No. 6, ("Resps.' Decl.") ¶ 10.

1

On November 24, 2009, Cheatham plead guilty to manslaughter in the first degree. *Id.* ¶ 11. At her allocution, she stated Petitioner "was already in the bed dozing off, pretty much asleep" when she entered the bedroom to begin putting the child to bed. *Id.* On January 6, 2010, Cheatham was sentenced to a term of imprisonment of twenty years to be followed by three years of supervised release. *Id.*

Petitioner plead not guilty and was tried before a jury. *Id.* ¶ 12. At trial, the prosecution argued Cheatham beat the child to death and Petitioner, having a legal duty to intervene, failed to stop the beating. In his opening statement, defense counsel told the jury Petitioner slept through the beating. *Id*. Defense counsel also told the jury he intended to call Cheatham as a witness to support this claim and that Cheatham had previously stated, under oath, Petitioner "was already in the bed dozing off, pretty much asleep" when she came into the bedroom to put the child to bed on the night in question. *Id*. at ¶ 11. During the trial, after Cheatham received a subpoena to appear in court, Cheatham's counsel addressed the Court outside of the presence of the jury. *Id.* ¶ 13. Cheatham's counsel told the Court he had cautioned defense counsel against calling Cheatham as a witness saying, "be careful what you ask for because you may not get what you want," insinuating Cheatham may not provide the exculpatory testimony defense counsel anticipated. *Id.* Cheatham's counsel went on to tell the Court, "there's a very good chance if [defense counsel] calls my client and asks her certain questions, she may give answers that could hurt this case." *Id.* Cheatham's attorney then advised defense counsel Cheatham would not speak with defense counsel before testifying. *Id.* ¶ 14. Defense counsel made the decision not to call Cheatham to the stand. *Id.* ¶ 15. The Government also did not call Cheatham as a witness. *Id.*

2

The evidence at trial showed the child was beaten so severely he suffered confluent bruising—an extensive area of bruising where the bruises merge—making it impossible for the medical examiner to determine the number of times the child was struck. *Id.* ¶ 7. In addition to significant bruising, the child's lips were torn and his anus was bruised and torn. *Id.* Blood was found on the walls of the bedroom and on the bed in which Petitioner and Cheatham slept. *Id.* The medical examiner determined the child's injuries were consistent with the beating having taken place over the course of many hours. *Id.* ¶ 8.

At trial, the prosecution offered a statement Petitioner made to the police at the scene the morning after the incident. *See* Resps.' App. Brief at 76. In the statement, Petitioner says he did not know anything was wrong with the child until Cheatham called him at work the following morning, although he had woken up several times during the night because he heard Cheatham talking to the child. *Id.* However, when Petitioner testified at trial, he told the jury he slept from 1:00 A.M. until his alarm went off at 7:00 A.M., contradicting the earlier statement. *Id.* Petitioner also testified he was a heavy sleeper, and he presented the testimony of other witnesses who agreed. *Id.*

The jury found Petitioner guilty of murder in the second degree. *Id.* ¶ 16. On March 11, 2010, at Petitioner's sentencing, the Court stated, "[h]aving seen the pictures of where this torture was unleashed, a very small bedroom with an infant's crib and adult bed crowded on top of each other by a large screen T.V., neither the Court, nor more importantly the jury frankly thought that the Defendant's claim of sleeping through this night of frenzied madness raised any reasonable doubt as to the Defendant's culpability." Resps.' App. Brief at 43. The Court sentenced Petitioner to a term of imprisonment of eighteen years to life. *Id.*

II.     **Post-Conviction Activity**

3

Petitioner appealed from his judgement of conviction to the Supreme Court of the State of New York, Appellate Division, Second Judicial Department. Resps.' Decl. ¶ 17. He alleged: (1) he was deprived of his right to present a defense by the Court's preclusion of evidence concerning Cheatham's psychiatric history; (2) he was deprived of effective assistance of counsel at trial because counsel failed to present the jury with favorable testimony from Cheatham and testimony concerning Cheatham's troubled mental health history after having told the jury, during his opening statement, such testimony was forthcoming; (3) he was deprived of a fair trial by the prosecutor's summation; and (4) the verdict was against the weight of the evidence. *Id.*

On May 2, 2018, the Appellate Division affirmed Petitioner's conviction. *Id.* ¶ 18. The Appellate Division determined: (1) the trial court properly precluded evidence about Cheatham's mental stability because it was irrelevant; (2) the verdict was not against the weight of the evidence; and (3) Petitioner was not deprived of effective assistance of counsel. *People v. Martin*, 76 N.Y.S.2d 572, 573–74 (App. Div. 2d Dep't 2018). Additionally, the Appellate Division determined Petitioner's summation claim was partially unpreserved for review and although some of the comments may have been improper, they did not deprive Petitioner of a fair trial. *Id.*

Petitioner sought leave to appeal to the New York Court of Appeals from the Appellate Division's order affirming his judgment of conviction. Resps.' Decl. ¶ 19. In his application for leave to appeal, Petitioner raised the same issues he had raised to the Appellate Division. By certificate dated July 13, 2018, the New York Court of Appeals denied Petitioner's application for leave to appeal. *Id.*; *People v. Martin*, 108 N.E.3d 506 (2018).

4

On August 8, 2019, Petitioner filed a petition for a writ of habeas corpus in this Court. Petition, ECF No. 1.  In the petition, Petitioner claims he was deprived of effective assistance of counsel at trial, based on the same ground he raised before the Appellate Division.  *Id.*  Specifically, Petitioner argues defense counsel was ineffective because he promised the jury exculpatory testimony from Cheatham, without first confirming Cheatham was willing give such testimony.

## DISCUSSION

### I.   Legal Standard

The Court's review of the Petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254.  Under AEDPA, an application for a writ of habeas corpus shall not be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication of the claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.  *Id.*  Courts have interpreted the phrase "adjudicated on the merits" in AEDPA as meaning a state court "(1) dispose[d] of the claim on the merits, and (2) reduce[d] its disposition to judgment." *Sellan v. Kuhlman*, 261 F.3d 303, 312 (2d Cir. 2001) (internal quotation marks omitted).  Courts examine the "last reasoned decision" by the state courts in determining whether a federal claim was adjudicated on the merits.  *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991). "[W]hen a state court issues an order that summarily rejects without discussion *all* the claims raised by a defendant, including a federal claim that the defendant subsequently presses in a federal habeas proceeding, the federal habeas court must presume (subject to rebuttal) that the

federal claim was adjudicated on the merits." *Johnson v. Williams*, 568 U.S. 289, 293 (2013) (emphasis in original).  The same presumption applies when "a state court rules against the defendant and issues an opinion that addresses some issues but does not expressly address the federal claim in question." *Id.* at 292.  This "presumption is a strong one that may be rebutted only in unusual circumstances." *Id.* at 302; *see also Cruz v. Griffin*, 16-CV-8998, 2019 WL 6220806, at *9–10 (S.D.N.Y. Oct. 24, 2019) (McCarthy, Mag.), *report and recommendation adopted*, 16-CV-8998, 2019 WL 6211262 (S.D.N.Y. Nov. 20, 2019) (Seibel, J.).

> A. The Appellate Division Decided Petitioner's Federal Ineffective Assistance of Counsel Claim on the Merits

With respect to Petitioner's ineffective assistance claim, the Appellate Division wrote only, "[t]he defendant was not deprived of the effective assistance of counsel, as defense counsel provided meaningful representation." *People v. Martin*, 76 N.Y.S.3d 572, 574 (App. Div. 2d Dep't 2018).  The Appellate Division cited to two New York Court of Appeals cases, both of which recognize there is a "somewhat different test for ineffective assistance of counsel under article I, § 6 of the New York Constitution" than under the federal constitution. *People v. Benevento*, 697 N.E.2d 584, 588 (1998) (quoting *People v. Claudio*, 629 N.E.2d 384, 385(1993)).  Under the New York standard, the relevant inquiry is the "fairness of the proceedings as a whole." *People v. Stultz*, 810 N.E.2d 883, 887(2004).  Petitioner argues because the state court did not cite *Strickland v. Washington*, 466 U.S. 668 (1984), which sets forth the federal standard governing ineffective assistance of counsel claims, it did not adjudicate Petitioner's federal ineffective assistance of counsel claim on the merits.  Therefore, Petitioner argues, AEDPA does not apply and this court should review Petitioner's 6th Amendment ineffective assistance claim de novo.

However, while the Appellate Division discussed the New York standard for effective assistance of counsel, the use of the phrase "meaningful representation," along with the absence of any discussion of a procedural bar on these claims, constitutes an adjudication on the merits of petitioner's federal ineffective assistance of counsel claim. *Bogan v. Bradt*, 11-CV-1550, 2017 WL 2913465, at *8 (E.D.N.Y. July 6, 2017) (Brodie, J.) (determining state court decided petitioner's federal ineffective assistance of counsel claim on the merits where appellate court cited only New York state standard); *see also Gersten v. Senkowski*, 426 F.3d 588, 606 (2d Cir. 2005) (determining state court decided petitioner's ineffective assistance of counsel claim on the merits where the court summarized "that the defendant received meaningful representation"); *see also Eze v. Senkowski*, 321 F.3d 110, 123–24 (2d Cir. 2003) (same).

B.  The Appellate Division's Decision is Due AEDPA Deference

Because this Court finds the state court adjudicated the merits of Petitioner's federal ineffective assistance claim, AEDPA applies. Therefore, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard. Were that the inquiry, the analysis would be no different than if, for example, [the district court] were adjudicating a *Strickland* claim on direct review of a criminal conviction[.]" *Paige v. Lee*, 99 F. Supp. 3d 340, 345 (E.D.N.Y. Apr. 16, 2015) (Kuntz, J.) (quoting *Harrington v. Richter,* 562 U.S. 86 (2011)). Therefore, to the extent a habeas petitioner must show both counsel's performance was unreasonable and the state court's decision to the contrary was unreasonable, a "doubly deferential" standard of judicial review applies to ineffective assistance of counsel claims analyzed under 28 U.S.C. § 2254(d)(1). *Santana v. Capra*, 284 F. Supp. 3d 525, 538 (S.D.N.Y. Jan. 11, 2018) (Koeltl, J.) (citing *Knowles v. Mirzayance*, 556 U.S. 111 (2009)).

**II.     Petitioner's Ineffective Assistance of Counsel Claim Fails**

While review is even more deferential in this context, as an initial matter the Court may evaluate whether defense counsel's performance was sufficient under *Strickland*, as a finding defense counsel met the *Strickland* standard is dispositive of Petitioner's AEDPA claim for ineffective assistance of counsel.  *Moreno v. Smith*, 06-CV-4602, 2010 WL 2975762, at *15 (E.D.N.Y. July 26, 2010) (Matsumoto, J.).

Under *Strickland*, to prevail on an ineffective assistance of counsel claim, a defendant must meet a two-pronged test: (1) he "must show that counsel's performance was deficient," 466 U.S. at 687, so deficient that, "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance," *id.* at 690; and (2) he must show "the deficient performance prejudiced the defense," *id.* at 687, in the sense that "there is a reasonable possibility that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694.  *Bennett v. United States*, 663 F.3d 71, 84 (2d Cir. 2011). "It is the accused's 'heavy burden' to demonstrate a constitutional violation under *Strickland*." *Moreno*, 2010 WL 2975762 at *15 (quoting *United States v. Gaskin*, 364 F.3d 438, 468 (2d Cir. 2004)).  As set forth in detail below, Petitioner has not met his high burden of establishing he received ineffective assistance of counsel at trial.

A. <u>Defense Counsel's Unfulfilled Promises to the Jury Did Not Meet the Standard for Deficient Performance</u>

Under the first prong of *Strickland*, "[j]udicial scrutiny of counsel's performance must be highly deferential . . . .[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome

the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689 (internal quotation marks and citations omitted).

Petitioner rests his ineffective assistance claim on defense counsel's promise to the jury, during his opening statement, that he would support his contention Petitioner slept through the beating with testimony from Cheatham, without first confirming Cheatham was willing to provide such testimony. Defense counsel did have a reasonable basis to believe Cheatham would be willing to corroborate Petitioner's claim he slept through the beating. Namely, he was aware Cheatham had already made a sworn statement during her allocution lending support to Petitioner's claim he was sleeping during the beating, and counsel knew Cheatham was not cooperating with the Government. Admittedly, defense counsel's decision to promise the jury they would hear from Cheatham was unwise. Even if defense counsel firmly believed Cheatham would testify, he should have exercised a greater degree of circumspection in his opening statement to the jury. "Given the inherently unpredictable nature of trial, it is impossible to know with certainty how events are going to unfold and what their impact on myriad, intertwined tactical decisions will be. Thus, frequently, discretion is the better part of valor." *White v. Greene*, 05-CV-0545, 2010 WL 2104290, at *5 (W.D.N.Y. May 24, 2010) (Bianchini, J.). However, even though counsel may have committed a misstep, the Court does not believe it was an "error so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* (quoting *Strickland*, 466 U.S. at 687).

Defense counsel's decision to tell the jury Cheatham had given a sworn statement saying Petitioner was "was already in the bed dozing off, pretty much asleep" when she entered the bedroom may have had some strategic benefits. Counsel may have made a calculation, that while he could not be certain Cheatham would testify, it would be in his client's interest for the

9

jury to hear Cheatham's statement at the outset of trial, regardless of whether she ultimately testified.

When defense counsel learned Cheatham would not speak to him before testifying, he made another strategic decision not to put her on the stand. This was clearly a smart choice, as he had no way of knowing whether she would exculpate or inculpate Petitioner in the crime. Understanding it was not ideal to have overpromised to the jury, defense counsel made the strategic decision to point out, in summation, the Government's decision not to call Cheatham, indicating they also did not think she would have provided testimony helpful to the prosecution. With this argument, counsel made clear to the jury—in reasonable anticipation the Government would point out his own failure to call Cheatham—that the jury should not draw an inference favorable to the Government from Cheatham's absence.

Despite this misstep, defense counsel otherwise put on a legitimate defense. Tasked with the very difficult duty of representing a guardian whose child was beaten to death over a number of hours while he was in the room, defense counsel argued Petitioner was asleep. He elicited testimony from Petitioner himself that he was asleep during the beating and unaware it was taking place. He also called several witnesses who testified Petitioner was a caring father and guardian, nonviolent, and a very heavy sleeper.

Ultimately, while defense counsel's decision to promise the jury they would hear from Cheatham, before confirming she would testify in support of their case was unwise, it did not amount to the kind of error so serious to amount to a violation of Petitioner's Sixth Amendment rights, especially in light of the rest of the defense. *See Matthews v. Capra*, 14-CV-01112, 2016 U.S. Dist. LEXIS 191644 (N.D.N.Y. Nov. 29, 2016) (Singleton, J.) (unfulfilled promise to call a witness at trial does not automatically render counsel ineffective where counsel otherwise

presented a vigorous defense), *reversed on other grounds*, 699 Fed. Appx. 98 (Nov. 22, 2017) (Summary Order); *People v. Lopez-Mendoza*, 33 N.Y.3d 565, 572, (2019) ("[o]n its own, the decision not to call a witness after promising to do so does not establish ineffective assistance of counsel as a matter of law.") (citation omitted).

    B.  <u>Petitioner Cannot Establish Prejudice Resulted from Defense Counsel's Opening Statement</u>

Even if this Court had deemed counsel's misstep to be deficient representation, Petitioner would still have to demonstrate actual prejudice as a result. Under the second prong of *Strickland*, to establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, at 694. For the foregoing reasons, the Court finds Petitioner has failed to demonstrate there is a reasonable probability that the outcome of his trial would have been different or more favorable, but for counsel's deficient performance.

Petitioner was not prejudiced by defense counsel's overpromising the jury. Without defense counsel's comments at opening statements, the jury would not have been made aware Cheatham had made a statement under oath insinuating Petitioner may have been asleep during the beating. Further, defense counsel was able to use the misstep to point out, during closing statements, that although he did not call Cheatham, the Government similarly did not do so, implying they did not believe she would testify in support of their case. This left the jury to decide for themselves why Cheatham was not called by either party. Moreover, even if defense counsel had not promised the jury exculpatory testimony from Cheatham, the jurors would have

been left to wonder why the one person who would have been able to corroborate Petitioner's story was absent from the trial.

Additionally, Petitioner was not prejudiced by his counsel's misstep as the prosecution set forth significant evidence of his guilt. *Strouse v. Leonardo*, 928 F.2d 548 (2d Cir. 1991) (holding petitioner was not prejudiced in his murder trial given overwhelming evidence of guilt.). Petitioner was convicted of second-degree murder under a theory of depraved indifference to human life. The Government argued Petitioner failed to intervene in the beating, recklessly creating a grave risk of serious physical injury or death. To convict Defendant, the jury needed only to find Defendant was aware of the beating and took no action to stop it. At trial, the medical evidence established the child's death was not sudden, and the child sustained injuries consistent with a beating inflicted over a number of hours. Because it was clear Defendant was in the small room when the beating occurred, the entire defense rested on Petitioner's claim he slept through the beating in its entirety. However, in Petitioner's first written statement to police, when he thought he could claim the beating occurred in the morning after he left for work, he admitted to waking a few times during the night. Police also testified the morning after the beating Petitioner was "waving around his cell phone saying I wasn't here when any of this happened," Resps.' App. Brief at 5–6, and Petitioner "told [him] that the child used to dig in his, his butt until he was raw. He also stated to [him] that the child jerked off. He also stated to [him] that the child had [scabies]." *Id.* at 8. The prosecution pointed to these statements in summation implying these comments were consistent with someone trying to "explain away the injuries before anybody finds them." Trial Transcript, ECF No. 6-11 at 73.

Petitioner himself stated he heard his alarm clock ring in the morning, got up and dressed for work—all in the room where blood was found on the bed and walls—and left without

12

noticing anything was wrong. Finally, the Government set forth evidence Petitioner harshly disciplined the three-year old child earlier in the evening, arguing this was consistent with failing to intervene when the child was beaten later in the night. In light of all of this evidence, it is unreasonable to assume the outcome of the trial would have been different had defense counsel followed through on his promise to call Cheatham—who was highly impeachable herself—or not made any promises at all. Therefore, Petitioner has failed to meet the prejudice prong of *Strickland*.

In sum, after carefully reviewing the merits of Petitioner's ineffective assistance of counsel claim, the Court concludes Petitioner has not met the high burden set forth by *Strickland*. The state court's decisions on Petitioner's claims were not contrary to, nor an unreasonable application of, clearly established federal law, nor were they based on an unreasonable determination of the facts in light of the evidence presented in state court.

## CONCLUSION

For the foregoing reasons, Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is DENIED in its entirety. A certificate of appealability shall not issue. *See* 28 U.S.C. § 2253. The Clerk of the Court is directed to serve notice of entry of this Order on all parties and to close the case.

**SO ORDERED.**

s/ WFK
_____
HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: February 18, 2021
      Brooklyn, New York